UNITED STATES of America

v.

Henry D. MATHEWS.

No. EV 58–CR–8.

United States District Court
S. D. Indiana,
Evansville Division.

Feb. 3, 1959.

Don A. Tabbert, U. S. Atty., by James L. Miller, Asst. U. S. Atty., Indianapolis, Ind., for the United States.

John H. O'Hara, Indianapolis, Ind., for Henry D. Mathews.

STECKLER, Chief Judge.

This cause came before the court upon the defendant's motion to suppress evidence pursuant to Rule 41(e) (1) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The evidence consists of fifteen (15) gallons, more or less, of whiskey in one-gallon glass jugs, the immediate containers of which did not have affixed thereto, in such manner as to be broken upon opening the containers, federal revenue stamps.

The defendant was arrested by the United States authorities upon a complaint authorized by the United States Attorney charging violation of Title 26 U.S.C. (1954) §§ 7268, 5008(b) and 5642. The defendant, upon being brought before the District Court for waiver of prosecution by indictment and to consent to prosecution upon an information, refused to waive grand jury indictment. By leave of court defendant was granted time in which to file the motion to suppress the evidence either before the grand jury or in a trial before the District Court.

The defendant's motion to suppress was subsequently and timely filed. The Government thereafter filed its answer to the motion. On July 23, 1958 the matter was set for hearing before the District Court at which time evidence was heard. At the hearing leave was granted the parties to file a stipulation concerning certain testimony of an absent wit-

ness had he been present. In due course such stipulation was filed. Following the hearing each of the parties filed briefs in support of their respective positions regarding the evidence and the law. The court having considered the evidence, including the stipulation, the briefs of the parties and the oral arguments, now makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Henry D. Mathews, petitioner herein, on or about April 13, 1958, was the owner of the following described property, to-wit:

> "Distilled spirits, to-wit: fifteen (15) gallons, more or less, of whiskey, then and there contained in fifteen (15) more or less, one (1) gallon glass jugs, the immediate containers thereof not having affixed thereto, in such manner as to be broken on opening the containers any Federal revenue stamp."

2. On or about April 13, 1958, the distilled spirits above described were located and contained in a 1957 Mercury automobile, then being driven by petitioner, Henry D. Mathews, through the City of Petersburg, Indiana, in the Evansville Division of the Southern District of Indiana.

3. While said automobile was being so operated, petitioner Henry D. Mathews at about 2:30–3:00 a. m. was arrested by Bert Tisdale, a police officer of the City of Petersburg, Indiana.

4. Officer Tisdale was standing beside his police car at the corner of Fifth and Main streets when he noticed an automobile, which he later learned to be the petitioner's, driving at a high rate of speed, 50–60 miles per hour, in a 20 miles per hour speed zone. Officer Tisdale jumped into his automobile, gave pursuit, and finally stopped the petitioner in the automobile at Twelfth and Main streets.

5. The petitioner was questioned by the police officer and found to be without a motor vehicle operator's license. In lieu of a driver's license he had a receipt for a chauffeur's license dated December 12, 1957, under which authority to drive had long since expired. Upon further questioning, the petitioner informed the officer that he had lost his driver's license under the Indiana point system. He was arrested by Officer Tisdale for driving while his operator's license was suspended and then taken before Justice of the Peace Lawrence D. Biggs, whose office was located four blocks from the scene of the arrest, where he was also charged with the offense of reckless driving. According to Officer Tisdale, this occurred at about 3:00 a. m.

6. Before leaving the scene of his arrest, the petitioner was ordered to back his automobile to the curb. After backing the automobile, a 1957 Mercury, to the curb, the officer saw the petitioner "reaching down toward the floor boards of the car, of his car." The officer testified that he could not tell what the petitioner was doing but that it made him think that the petitioner was putting something in the car or taking something out of the car that he did not want the officer to see. Petitioner then got out of his car, locked it, and was taken by the officer to the Justice of the Peace. No search of the vehicle was made at that time.

7. The petitioner entered a plea of guilty before the Justice of the Peace and was fined Five Dollars ($5) and costs. Having insufficient funds, the petitioner attempted to cash a check made out to another person by calling the other person at Indianapolis, Indiana. Being unable to make telephonic contact with the person and to cash the check, and thus being without funds to pay the fine and costs, he was ordered to jail.

8. Justice of the Peace Biggs estimated the total time elapse during the proceedings before him was approximately three-quarters of an hour. Officer Tisdale estimated that the time he took the petitioner to jail was around 3:00

or 3:05 a. m. The officer was somewhat uncertain as to exact times, but it is apparent from the evidence that it was later than 3:00 or 3:05 a. m. when the petitioner was taken to jail inasmuch as the officer and the Justice of the Peace estimate the time of the arrival of the officer and the petitioner at the office of the Justice of the Peace was approximately 3:00 a. m.

9. During the time Officer Tisdale was questioning the petitioner at the scene of the arrest, the town's police whistle was sounded, indicating a police emergency call. This was in reference to an automobile accident which took place in another part of the Town of Petersburg fourteen blocks away.

10. After lodging the petitioner in jail, the officer went to the scene of the accident and upon his arrival found that the accident had already been investigated and an automobile was being towed away by a wrecker driven by one Earl Kendall, an employee of the local Chevrolet Agency.

11. Officer Tisdale then returned to the jail, picked up the keys to petitioner's automobile, drove to the Chevrolet garage where he met Kendall, and the two of them proceeded to the petitioner's automobile at Twelfth and Main. Petitioner's automobile was unlocked and Kendall drove it to the Chevrolet garage, Officer Tisdale following in his police car. Tisdale estimated it took approximately ten minutes to do this, and he estimated it took approximately fifteen minutes when he went from the jail to the scene of the accident and back to the jail to get the keys for petitioner's car.

12. At the garage a pistol was found beneath the driver's seat of petitioner's automobile. The testimony of Tisdale and Kendall is in hopeless conflict as to which of them discovered the gun. Officer Tisdale testified that Kendall directed his attention to the gun. Kendall denies that he discovered the gun and

states he did not see it while he was driving the vehicle to the garage. Tisdale testified that the pistol was protruding approximately three inches out from beneath the seat.

13. Being prompted by the discovery of the gun, Officer Tisdale took the keys of the car and unlocked the trunk. There he found the fifteen (15) gallons of whiskey here in question. No federal revenue stamps were affixed to the containers in such a manner as to be broken upon opening. After smelling the contents of one of the jugs, he concluded it was whiskey, and thereupon he locked the trunk and the automobile. He then went to the City Cafe on Main Street. Subsequently at 5:36 a. m. he returned the keys to the police station.

14. In the stipulation concerning the testimony that would be given by the absent witness, which was testimony intended for impeachment purposes only, it was stipulated that if the witness had been present he would have testified

"that on May 30, 1958, in his presence and in the presence of John H. O'Hara, Bert Tisdale stated that an hour and a half to two hours elapsed between the time of his arrest of the Defendant, Henry D. Mathews, on April 13, 1958, and the time when he first searched the automobile which the defendant was driving at the time of his arrest."

15. During all of these occurrences, Officer Tisdale was the only police officer on duty.

16. The same morning, Sunday, April 13, 1958, between 5:30 and 6:00 a. m., the Petersburg Chief of Police, William Harvey, communicated by telephone with Charles Connor at Evansville, Indiana, an investigator for the Alcohol and Tobacco Tax Unit, Internal Revenue Service, United States Treasury. In the telephone conversation Connor was informed of the discovery of the contraband whiskey which was found by Officer Tisdale in the petitioner's automobile.

17. Investigator Connor drove to Petersburg, Indiana, arriving at the police station at approximately 8:00 a. m. After conferring briefly with Chief Harvey and being shown the gun, the two of them drove to the Chevrolet garage where Harvey, who had the keys to the petitioner's automobile, proceeded to unlock the trunk, revealing the fifteen (15) gallons of whiskey. After observing there was no evidence of tax stamps on the containers, Investigator Connor smelled the contents of the jugs and concluded, in his professional opinion, that the contents of the jugs was spirituous liquor. All fifteen (15) jugs were opened by the investigator. No other search of the vehicle was made.

18. Investigator Connor made out a customary written report, locked the trunk and proceeded back to Evansville.

19. Investigator Connor did not have a search warrant at the time the petitioner's automobile was unlocked by Chief Harvey and the contents of the glass jugs examined.

20. On Monday morning, April 14th, Investigator Connor returned to Petersburg, arriving at about 11:00 a. m. There he advised Chief Harvey that he had obtained permission from the United States Attorney's Office at Indianapolis to proceed in the case and that the case would be adopted for federal prosecution. Chief Harvey then gave Connor the pistol and the keys to the automobile. The two of them again returned to the garage at which time Connor unlocked the trunk of the car, procured composite samples of the whiskey, some of which was clear and some of which was colored, for forwarding to the chief chemist of the Alcohol and Tobacco Tax Unit of the Internal Revenue Service, United States Treasury Department, Cincinnati, Ohio. No search warrant was ever obtained by Connor, either in connection with the first inspection of the vehicle or in connection with his second inspection on Monday morning.

21. Only on one previous occasion, approximately a year prior, had Investigator Connor had any contact with Officer Tisdale or Officer Harvey.

22. At no time had petitioner granted consent to any of the officers to search his automobile.

23. No official or representative of the Alcohol and Tobacco Tax Unit of the Internal Revenue Service, United States Treasury Department, or of any other branch or department of the Government of the United States of America in any way, either directly or indirectly, participated on April 13, 1958, in:

(a) the aforesaid initial arrest and incarceration of the petitioner;

(b) removal of the Mercury automobile which petitioner had been driving, together with the fifteen (15) jugs of distilled spirits aforesaid, then located in said automobile, to the garage prior to its initial search, or

(c) the initial search of petitioner's automobile or the aforesaid fifteen (15) glass jugs located in said automobile.

24. The initial search of petitioner's automobile by the city police of Petersburg was concluded prior to any search or inspection by Investigator Connor of petitioner's automobile and the fifteen (15) glass jugs therein located. There was neither participation nor concert of action on the part of Investigator Connor with the city police. The federal officer had no hand in the initial search. In fact, borrowing the words of Justice Frankfurter in Lustig v. United States, 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819, the evidence here was turned over to the federal authority "on a silver platter."

Conclusions of Law

From the foregoing facts the court concludes:

1. This court has jurisdiction of the subject matter and the parties.

2. The arrest of petitioner, Henry D. Mathews, on April 13, 1958 by an officer

of the City of Petersburg, Indiana, was a lawful arrest.

3. The initial search of petitioner's automobile and the fifteen (15) one-gallon glass jugs located therein, made by a police officer of the City of Petersburg, Indiana, on April 13, 1958, although made without a search warrant, was reasonable under all of the circumstances and was made pursuant to the aforesaid lawful arrest of petitioner, and properly extended to said automobile and to the fifteen (15) one-gallon glass jugs located in said automobile, and the contents of said jugs, as property of the petitioner, and over which he had possession and control at and immediately prior to the time of his arrest aforesaid by the officer of the City of Petersburg, Indiana.

4. The lapse of time between the initial arrest of the petitioner on April 13, 1958 and the initial search of petitioner's automobile and the fifteen (15) one-gallon glass jugs and their contents then located in said automobile, was not such a lapse of time as not to make said search an incident to the aforesaid lawful arrest of petitioner.

5. There was no federal participation, either directly or indirectly, on the part of any official or representative of the Alcohol and Tobacco Tax Unit of the Internal Revenue Service, United States Department of Treasury, or any other official or representative of the Government of the United States of America in the initial arrest of petitioner or in the initial search of petitioner's automobile and the fifteen (15) one-gallon glass jugs and their contents located in said automobile.

6. The law is with the United States of America and against the petitioner.

7. The property of petitioner Henry D. Mathews seized and taken from petitioner by officers of the City of Petersburg, Indiana, and thereafter taken and seized by the Alcohol and Tobacco Tax Unit of the Internal Revenue Service, United States Department of Treasury,

to-wit: Distilled spirits, to-wit: fifteen (15) gallons, more or less, of whiskey, then and there contained in fifteen (15) more or less, one-gallon glass jugs, should not be suppressed as evidence in this proceedings, No. EV 58–CR–8.

8. The petitioner's motion to suppress the aforesaid evidence should be and the same is hereby Overruled.